**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | Criminal No. 06-10181-WGY |
| | ) | |
| | ) | |
| **DEMONE COLEMAN** | ) | |

## GOVERNMENT SENTENCING MEMORANDUM

The parties have entered into a plea agreement in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and have agreed that the appropriate disposition is incarceration form 84-96 months. Assuming that the Court accepts the agreement, the government requests that the Court impose a sentence of 96 months, the high end of the agreed upon range.

1. The facts and circumstances of the offense of conviction

The facts and circumstances of the offense of conviction are not in dispute. See PSR, Addendum (no objections by the government; no objections to the statement of the offense conduct by the defendant). On May 3, 2006, defendant Demone Coleman took his girlfriend's car without permission. She reported it to the police and, a short time later, members of the Boston Police Department Gang Unit saw Coleman driving the car in the area of Greenwood and Erie Streets in Dorchester. PSR at ¶10.

The officers waited until backup arrived to facilitate stopping Coleman safely. Once it was in place, they activated

1

their blue lights in the area of Washington street.  Id. At 11.

Coleman did not comply, choosing instead to drive his car on an adjacent sidewalk in order to get away from the police.  He drove away at a high rate of speed, thereby endangering the lives of other drivers, area pedestrians, the officers who were chasing him, and of course himself.

Ultimately, the chase ended only when Coleman went through a stop sign and collided with another car ( without causing any personal injury).  Even then, however, Coleman still tried to run away on foot, and, when he finally realized he was cornered, jumped onto the ground in an effort to throw three eight balls of crack cocaine down an adjacent sewer.

Any review of these facts thus show its seriousness. As set forth above, Coleman took a car without permission and then led police on a high-speed chase that could have ended in tragedy. He tried to flee a second time (on foot), struggled with the police, and then attempted to destroy evidence by throwing it down the sewer.  Even if these acts don't rise to the level of guideline enhancements, surely they are circumstances relating to the nature and circumstances of the offense that counsel for a sentence at the high end of the agreed-upon range.  See 18 U.S.C. §3553(a).

But of course there are other factors that counsel for the same result, that is, a sentence of 96 months.  The defendant is

charged only with simple possession of more than five grams of cocaine base based on the circumstances of the offense as they existed at the time the case was brought.  Given Coleman's subsequent acknowledgment in the PSR that he is not a crack user, see PSR at ¶ it now seems clear that he had the drugs for some purpose other than personal use.  Although the government stands by the charging decision made in this case, this aspect of the "facts and circumstances" of the offense also suggest that 96 months (as opposed to 84 months) is the right sentence.

The court should also be aware that this is not the first time that the defendant has engaged in such conduct.  Attached as Exhibit 1 is a report of the incident referenced at Paragraph 50 of the PSR.  It describes an almost identical incident in which the defendant was involved in another drug related car chase on December 5, 2005.  The government has agreed with the defendant that it will not charge him for this offense as part of the present plea and it will of course honor that commitment.  The government nevertheless believes that the facts and circumstances of this second incident also show that 96 months is the right sentence in this case. E.g., United States v. Shrader, 56 F.3d 288 (1st Cir. 1995) (repetitive nature of convictions warranted established likelihood of recidivism).

Finally, any argument made by the defendant that the defendant's criminal history score is overstated and that this

suggests that an 84 month sentence should be imposed (<u>see</u> PSR at 31) is simply wrong.  The Criminal History calculations set forth in the PSR  (assessing Coleman 10 criminal history points as contemplated the government in entering into the plea agreement) are correctly calculated.  <u>See</u> U.S.S.G. §4A1.2, Application note 3 ("Prior sentences are not considered related if they are separated by an intervening arrest"). That rule makes sense in that treats separate incidents of criminal behavior separately.  The fact that some crimes may have been disposed of at the same time is also both an everyday occurrence in the state courts and one that is irrelevant from a guideline perspective.  <u>See, e.g. United States v. Correa</u>, 114 F.3d 314 (1st Cir. 1997) (charges separated by an intervening arrest should not be regarded as "related" unless the original sentencing court entered an actual order of consolidation or there is other persuasive evidence of formal consolidation apparent on the face of the record beyond the fact that sentences were imposed by the same judge at the same time).

There is also other evidence showing that there is no basis to go to the low end of the agreed upon range based on Coleman's criminal record.  Coleman's record shows numerous instances in which Coleman was shown leniency by the state court system only to go out and commit more crime, often while still probation. <u>See</u> probation violations described in PSR at ¶¶38,40, and 42.

4

See also United States v. Hernandez, 896 F.2d 642, 645 (1st Cir. 1990)("a defendant undermines the integrity of the criminal justice system when he commits a crime while ... under its supervision and control"). Similarly, the large number of pending cases that Coleman has also rebuts any claim that his criminal history is less serious than it seems.  See United States v. Diaz-Villafane, 874 F.2d 43, 50 (1st Cir. 1989) (pending charges not used in CHC calculation may be considered in upward departure decision); United States v. Laury, 985 F.2d 1293 (5th Cir. 1993)(repeated convictions displayed tendency towards recidivism that warranted *upward departure* under U.S.S.G. 4A1.3); United States v. Brewster, 127 F.3d 22, 25-28 (1st Cir. 1997) (same). Finally, the fact that there are serious offenses that are too old to be counted (see juvenile gun offenses described at paragraphs 35 and 36) also show that no under-representation claim can be made here.  See U.S.S.G. § 4A1.2 Application Note 8 (court can consider conviction outside applicable time period if it reflects serious dissimilar criminal conduct).  See also United States v. Brown, 51 F. 3d 233, 234 (11th Cir. 1995) (proper for sentencing court to consider remote conviction in upward departure if conviction reflected serious crime); United States v. Barber, 200 F.3d 908, 912-13 (6th Cir. 2000) ("juvenile offenses may . . . be considered as part of a recidivism inquiry" for departure"); United States *v.* Croom, 50 F.3d 433, 435 (7th

Cir. 1995) (citing Note 8, "juvenile convictions may not be counted directly, but they may be considered as part of the pattern of recidivism").

## CONCLUSION

The parties have negotiated an agreement that reflects the seriousness of the offense of conviction and the history and characteristics of the defendant. It is an agreement the government believes to be fair, particularly in view of the defendant's prompt acceptance of responsibility for what he did. The government therefore asks the court to accept it.

The issue the agreement creates is where the defendant should be placed in the 84-96 month range contemplated by the agreement. For the reasons set forth below, the government requests that the Court sentence Coleman to 96 months in prison.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/John A. Wortmann, Jr.
JOHN A. WORTMANN, JR.
Assistant U.S. Attorney
One Courthouse Way
Boston, MA 02210
(617)748-3100